Good morning, Your Honors. Mark Roach of Baker McKenzie on behalf of Petitioner Juan Carlos Valdez-Bernal. Your Honors, if I could, I'd like to reserve two minutes for a rebuttal. Sure. Thank you, Your Honors. Your Honors, twice now the Immigration Court and the BIA have ignored this court's precedent. The proper standard in this case is substantial, credible evidence. The IJ and the BIA have twice applied the preponderance standard to determine that Mr. Valdez-Bernal failed to meet his burden. Mr. Valdez-Bernal met his burden by offering substantial and credible evidence in support of his defense to removal. When you say credible evidence, don't we have a problem with the credibility of the deceased mother? The mother's credibility was called into question by the immigration judge. We think it's important to look at what the immigration judge does as much as what he says. The immigration judge credits Mrs. Valdez-Bernal's testimony with respect to Carlos' presence in the U.S. from 1946 to 1950. 1946 or 1953 on? It's important. That's the heart of it, the credibility problem, is the inconsistencies in her statements. Understood, Judge Talmadge. When we look closely at the record, what we see is that the immigration judge indeed credits from 1946 to 1950 for the purpose of calling Carlos sneaky and calling into question his statements. But you're right, not when the ultimate time to determine whether to credit that exact same testimony for purposes of establishing Carlos' presence in the United States. And I can explain. Before you explain, the problem is that it goes to the very heart of the amount of time that would otherwise be credited to him. And where you've got the widow unsure, A, as to whether she met her husband after the big war or the Korean conflict, whether they first met when he got out of the service in Tijuana. I mean, those are really significant inconsistencies that the I.J. cited in making an adverse credibility finding. That's correct. In one sense, he does. I agree with you, Your Honor. But I think it's also important to note that when the record reveals that the immigration judge also credits it for any purpose, given the right at stake here. Well, he credits some of it. There's a difference. I mean, a fact finder is always permitted to discredit some, all, or part of the testimony. And it looked to me like he was willing to credit her with regard to testimony that was corroborated by other records. For example, what we can reconstruct of his military history. But to say that he credited her statement that he was in the United States from 1946 on, I think, is a stretch on the record count. So the immigration judge, I mean, we all agree that Carlos is the central figure here. And the immigration judge describes- He's a bit of a mystery, I think, a mystery figure as the immigration judge. Well, actually, I can- Almost a ghost. I can further elaborate that. Actually, what he describes him as is sneaky, as leading a double life, as, quote, having a reputation for sneakiness. And that's at page 320 of the record. And in the opinion, he calls, says that it's obvious that Mr. Valdez, that Carlos had a life apart from Petitioner's family. And therefore, he casts doubt on his statements. But the only way he reaches that conclusion is- Well, but his Petitioner sisters talk about how he comes for weekends. I mean, he's plainly not living a seven-day-a-week life with this family. I don't know that that's requiring crediting the mother or any other particular person's testimony. That's what everybody's saying. Nobody's saying he's there full time. Right. Agreed. But the point about whether he's leading a double life, that only comes into play if you credit the fact that Mrs. Valdez Bernal was in a relationship with him. Because it's undisputed, in a relationship from 1946 to 1950, because it's undisputed that Mr. Valdez Bernal's father had a child in the United States prior to going to the war. So if you say that Mrs. Valdez Bernal's testimony is entirely discredited, which on the one hand, the immigration judge does, then you can't reach the conclusion that he was leading this double life because they never met at that time. I think that's a misrepresentation of the record. He's not discrediting everything she said. He's crediting her with some of the things that can be corroborated by other evidence in the case, and that's different from completely discrediting what she said. But I'm more concerned. I'm looking at ER 246, where the immigration judge starts out by saying the respondent's father, through whom the respondent claims citizenship, is a bit of a mystery. He's apparently a citizen of the United States from birth, since he was granted a certificate of citizenship and not a certificate of naturalization. How he became a citizen at birth is a mystery on this record. The birth certificate indicates that he was from Mexico, not Guatemala. His death certificate indicates that he was not a veteran, despite testimony that he died as a result of a service injury. Now, it seems to me, regardless of what standard was applied here, you've got some significant proof problems as to, A, who the father was, and, B, during what parts of his life was he ever in the United States for the requisite time. Well, Your Honors, the facts that are undisputed is that Mr. Valdez, for now, and granted, the means by which he is a citizen is unknown on the record, but the fact that he is a citizen is undisputed. The fact that he served this country honorably in the Korean War is undisputed. So you don't think that a death certificate that says he's not a veteran disputes that fact? We think the fact that the certificate of military citizenship, certificate of military service, which reflects his service precisely to July 7, 1953, reflects that he served honorably in the Korean War. The fact that he died of injuries sustained in the Korean conflict that lagged him through life proves beyond a doubt that he was a veteran of the armed forces. The evidence doesn't have to be undisputed, does it, to get the hearing? It does not, Your Honor, and that's an important point. The government here bears the ultimate burden of proving alienage by clear and convincing evidence. Now, it's true that the foreign birth certificate places upon us an obligation to come forth with substantial evidence. Now, that standard is relatively low, and that's what the government takes issue with, but the principle is that what Mr. Valdez, for now, seeks, let me back up, these are not citizenship proceedings. These are removal proceedings, and if Mr. Valdez, for now, carries his burden and offers substantial credible evidence, then he wins nothing more than the obligation to call the government to task to prove its burden. And what would you cite to us as, in essence, your bullet points of credible evidence to warrant entitlement to an evidentiary hearing? Your Honor, set aside the Mother's Testament entirely. Let's just look at the sisters. It's undisputed that he, again, was a U.S. citizen, that his father was a U.S. citizen, that he served honorably, and that prior to joining the military sometime in or prior to 1950, had a child with a woman while living in the United States. We believe that on that alone, properly applying the substantial credible evidence test, that there is a reasonable inference that Carlos satisfied the period of time necessary to pass citizenship to his son. The last bullet point. The sister really can't speak to that because she's too young to know what happened before the Korean War, what she reports, as I understand it, is that she's told she has a half-brother in, I guess, L.A. But that doesn't tell us very much about where Carlos was actually living at the time, since his own children here demonstrate you don't have to be living someplace. In this case, he had his children in Mexico, but he claims not to have been living in Mexico then. So what do we really have with regard to where he was living prior to the Korean conflict? So that's a good point. It raises two points. First, the sister Maria Guadalupe Gutierrez testified that she was told by her father that he had the child while in Los Angeles prior to going to the war. So it does establish presence in the United States for that purpose. But she was two years old at the time, right? Oh, she wasn't born at that time. This is something that she was told later in life by her father. And so that establishes the fact that he was in the United States. And your point about the fact that these children were born in Mexico, but Mr. Valdez Bernal was not living in Mexico, it's true that this record is about facts that are six decades old. And we're forced, by virtue of the passage of time and the fading of memories, to make some inferences. And the Supreme Court has articulated the substantial evidence standard such that it is the amount of evidence necessary to withstand a directed verdict. And under that test, the reasonable inferences must be drawn in favor of the nonmoving party. And here, that's Mr. Valdez Bernal. So when we look at the fact that he was in the United States, had a child in the United States, worked in the United States, that reasonable inference would lead a trier of fact to determine that he could have established the presence required to pass citizenship to his son. So you have about a minute left. Okay, thank you, Your Honor. Thank you, Mr. Wood. The other point which I wanted to raise. You wanted to reserve some. You're welcome to use it all up if you'd like. No, I would like to reserve for a bottle. Thank you, Your Honor. Sure. Good morning. Please, the Court. I'm Mark Walters, representing the Attorney General. This case becomes very simple if we look at a single, simple controlling issue, and that is whether there's any evidence in this record to show that the petitioner's father lived in the United States or was present in the United States before the middle of 1950. There is no evidence in the record to show that he was present at that time. No, that was the last subject discussed with counsel for petitioner, and counsel for petitioner cites the birth of the half-sibling, half-brother, I think it was, in Los Angeles and the statement, apparently, by Carlos, the petitioner's sister, that Carlos was living in Los Angeles when that child was born in the 1940s, late 40s sometime. No problem. Nobody established when the child was born. The mother in her discredited declaration said that he was born just before Carlos went off to the war, which would have put it sometime in 1950. Again, not establishing anything before 1950. And then later on, she said when she was examined about that declaration, she didn't know when Francisco was born. The sister's declarations and testimony don't establish when Francisco was born, even if you credit their testimony, because they don't mention dates. They have no idea, and they have no way of knowing, and even if we accept the fact that when you recite family histories, none of us really have a firsthand knowledge of the early years for us, they don't purport to have been told when he was born. So there's no date mentioned by anybody about Francisco being born in the U.S. before 1950. Moreover, as the immigration judge observed, the birth of a child in the United States wouldn't establish that Francisco or that the petitioner's father lived here anyway. As the judge aptly noted, that he's claiming that he didn't live in Mexico and yet he had three children born in Mexico in a five-year period in the late 1950s, at a time when he says he lived in the United States. So Francisco's birth proves nothing, even if the date of that birth were known, but the record doesn't establish the date of Francisco's birth. The World War II claim apparently has been abandoned on remand. The papers filed below by the petitioner on remand make reference to the Korean War now. So when the petitioner's mother says that she met him after the war, it was after the Korean War. That's her last version and the one that she was eventually credited with. The petitioner's brother-in-law says he thinks it was the Korean War. Well, doesn't the death certificate establish that he would have been too young to serve during World War II? Absolutely. If he, at the outbreak of the war, entered the service, he would have been 13 years old at the beginning of World War II. So common sense doesn't support the idea that it was World War II. The military records reference the fire which made the retrieval of primary service records impossible for some of the years in question here. However, the letter covering the certificate from the National Personnel Records Center doesn't just say that leaves us with no answer to your question. It says, fortunately there are alternate, and this is AR 1029, fortunately there are alternate record sources that often contain information which can be used to reconstruct service record data. And then in the second paragraph, the information used to prepare the enclosed NA form 13038 was obtained from an alternate record source. So they don't say we don't know when you served. They talk about the incompleteness. They say we can't provide you with those primary records, but that we've established through alternate sources that your service was in the Korean War. Well, actually it says from January 1, 1951. It seems like an improbable entry date. So it suggests to me it may not be a precise definition of exactly when Carlos was in the Army. Think about it. New Year's Day, is that a real likely day for someone to enter into service? Well, I would agree, Your Honor. I think it's unlikely. Unfortunately, however, we've naturalized people on the Fourth of July, which is a holiday. I do it every year. Yeah, I mean, when patriotism is involved, the fact that it's New Year's Day, I won't rule out the fact that it could be January 1. I thought the record said no later than January 1, so that it allowed for the possibility that he might have been in sometime prior to January 1. Did I miss that? Well, I think the arguments say no later than January, but this one says the record needed to answer your inquiries in our files, and I'm looking at 1029, the cover letter now, and I don't see a reference to no later than. It gives specific dates, and it says he's done it from alternate record sources. But the bottom line is the testimony in this record from witnesses that did not change their stories indicated that Carlos came to the United States six months prior to the outbreak of the war. The date of the outbreak of the Korean War, which I don't have off the top of my head, is right around this time. Six months would put him at most into 1950 at some point, and everybody agrees that that's when he came to the United States. The parties don't agree on that, but the evidence agrees. So there's just no evidence, even when we talk about Francisco's birth, military records, Social Security records, which again, Social Security records don't establish conclusively that he wasn't here, but he wasn't working here or wasn't paying Social Security here, which he later did at any time prior to entering the service. Well, the record shows no earnings before 1953, but we know that military personnel didn't pay into Social Security at that time. So we know he wasn't in the military before the outbreak of the Korean War. What we know from the record here is that there's nothing to establish from the Social Security records the missing years either. And finally, the alleged bias of the immigration judge doesn't lend anything here either because there's no showing of prejudice. Petitioner's reply brief again reasserts the bias argument, but ignores our statement in our response brief that you have to show prejudice. And on this record with this evidence, it wouldn't matter if the immigration judge was biased. We strongly dispute the allegation that he was. This individual didn't even claim to be a U.S. citizen. It was the immigration judge who gave him the idea that this might be an issue. If we are hampered now by the passage of a lot of years, it's because this individual's father never claimed to be a citizen in any way that benefited his son while he was alive. His son came to the U.S. as an immigrant, lawful permanent resident. Why would he have to do that? So the passage of time here and the fogging up of the underlying facts as a result of the passage of time doesn't suggest that a lower standard ought to be applied. It simply suggests that, in this case, the way the events played out is inconsistent with a claim to citizenship. It's being made after the key facts are long in the past and the proof is hard to come by. In conclusion, it's our view that, in this case, there's no genuine issue of fact that would require a transfer to district court. This case can be decided by this court on the administrative record on the citizenship issue, and I think the court can comfortably affirm the agency as it did before when the facts were essentially the same. Thank you, Mr. Walters. Thank you. Mr. Roche, back to you. You have about a minute left. Thank you, Your Honor. I'd just like to make two last points. Mr. Valdez-Bernal has been in custody for six years. The government purports for an individual who's undisputed, his father was a veteran, a citizen, to be able to deport them on nothing more than a certificate or on the basis of a birth certificate. This court's standards demand more. And lastly, with respect to whether there is a genuine issue, we just simply refer the court to Chau and Ayala. In Chau, what created a genuine issue was the mother's statement that I think the individual who fathered my child was Nick. He had a paratrooper's outfit. That created a genuine issue. Here we have documents, we have evidence, we have numerous witnesses testifying to the genuine issue of material fact here at Citizenship. So we would request if the court doesn't grant the relief that we seek that this case be transferred under 1252B5B for further proceedings. Doesn't he have a habeas corpus petition pending in the Southern District of California? He's being represented by the Public Defender's Office. I believe the habeas petition has been stayed pending this case. Thank you. You're welcome. Thank you, Your Honor. The case just argued is submitted. Mr. Walters, thank you for your argument. Mr. Rocha, a special thank you to you and your firm for taking this pro bono case for us. Thank you. 10-50081, United States v. Waugh. Each side will have 10 minutes.
judges: Silverman, Tallman, Clifton